[Crim. No. 5440. Third Dist. Mar. 17, 1970.]

THE PEOPLE, Plaintiff and Respondent, v.
KENNETH WEST GREGG, Defendant and Appellant.

## COUNSEL

Hughes, Maul, Fogerty & Dezzani, Pelletreau, Gowen, Moses & Porlier and William P. Moses for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Jack R. Winkler and Edward W. Bergtholdt, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**FRIEDMAN, J.**—On rehearing. On January 15, 1970, we filed an unreported decision affirming defendant's conviction of marijuana sale and possession for sale. On January 27 the State Supreme Court filed its decision in *People* v. *Moran,* 1 Cal.3d 755 [83 Cal.Rptr. 411, 463 P.2d 763], which caused us to doubt our decision's compatibility with California law. We therefore ordered a rehearing on our own motion.

The pivotal question here is whether the defense of entrapment may be claimed where there is no evidence that the person instigating the crime was a police agent. Credible or not, defendant's testimony provided some evidence that Koche, a private citizen, had inveigled him into the crime. The trial judge, nevertheless, rejected a defense request for entrapment instructions. Apparent basis of the rejection was the complete absence of evidence that Koche was a police decoy when he allegedly solicited the marijuana purchase.[1]

On appeal defendant does not claim that entrapment was established as a matter of law. Rather, he relies upon the rule that rejection of entrapment instructions is error if there is substantial evidence to sustain the defense. (See fn. 1, *supra.*) ■ That rule is an expression of the general principle that a defendant is entitled to have the jury determine every material issue upon which there is evidence deserving of any consideration whatever. (*People* v. *Carmen* (1951) 36 Cal.2d 768, 773 [228 P.2d 281].)

We summarize the evidence: Thomas Koche (an employee of a restaurant at South Lake Tahoe) testified that after defendant had been working at the restaurant for several weeks, defendant mentioned that he had gone to the Bay Area and picked up some "grass" (approximately 25 lids) and inquired if he (Koche) or anyone he might know would be interested in buying some. Koche told defendant that he had a friend employed at a casino who might possibly be interested and would check with him; defendant was to call him (Koche) the next day. Instead, when Koche got off work he went to the police department and reported the incident. At the request of the police, Koche agreed to cooperate with them. (Koche testified that he had no connection with the police at the time defendant

---

[1]Availability of the entrapment defense turns upon whether the criminal design originated in the mind of the defendant or in the mind of the enforcement authorities. (*People* v. *Benford,* 53 Cal.2d 1, 10 [345 P.2d 928].) If there is substantial evidence to sustain the defense, the rejection of appropriate jury instructions is reversible error. (*People* v. *Goree,* 240 Cal.App.2d 304, 310-312 [49 Cal.Rptr. 392]; *People* v. *Monteverde,* 236 Cal.App.2d 630, 640 [46 Cal.Rptr. 206].) Where there is no evidence of unlawful entrapment, no instruction on the subject need be given. (*People* v. *Malotte,* 46 Cal.2d 59, 65 [292 P.2d 517].)

offered to sell marijuana.) On the following day when defendant called, Koche told defendant that his friend was interested, and arrangements were made to meet at defendant's apartment that evening.

That evening Koche and a sheriff's deputy, Walter Spiller, went to defendant's apartment. After a general discussion, defendant, addressing Spiller, stated, "I understand you are here to buy some dope." After discussing quantity and price—defendant quoted a price of $12 a lid and rejected Spiller's offer of $10 a lid—an agreement was reached, and defendant went to the kitchen, returning with four plastic bags of marijuana. Spiller looked at it, said it looked good, so he would take 10 lids. Defendant fetched six more bags and accepted $120 in marked bills.

Defendant was then arrested. Several officers waiting outside, who had been listening to the conversation over a small radio transmitter, entered and searched defendant's apartment and found 14 more plastic bags of marijuana and some marijuana seeds and residue. The 24 plastic bags contained 546 grams of marijuana, the equivalent of 1,800 marijuana cigarettes.

In his own testimony defendant admitted the possession and the sale of marijuana to Officer Spiller but claimed that the sale of marijuana was instigated by Koche. He testified that during the course of a conversation with Koche he mentioned that he had been getting "stoned" and smoking marijuana; that Koche asked defendant if he had any dope, what kind, and the amount; that Koche then told defendant he had a friend who might be interested in buying some and asked defendant if he would be interested in selling; that after thinking it over, defendant indicated he was, so arrangements were made to consummate the sale. Defendant admitted that he was the first one to mention marijuana in his apartment, but only after Officer Spiller stated, "Well, let's get on with it."

In our original opinion in this case we stated: "The entrapment defense is designed to prevent the seduction of innocent people into criminality by officers of the law, and the suggestion of crime by a private citizen does not give rise to the defense. (*People* v. *Wirth,* 186 Cal.App.2d 68, 72 [8 Cal.Rptr. 823]; *United States* v. *DeAlesandro,* 361 F.2d 694, 698-699; see also, *People* v. *Perez,* 62 Cal.2d 769, 775 [44 Cal.Rptr. 326, 401 P.2d 934].) There is no evidence whatever that the police or a police agent instigated the crime."

Our confidence in the quoted statement was shaken by an adumbrative utterance in the *Moran* opinion, a *per curiam* opinion which had the concurrence of four members of the Supreme Court. The utterance is as follows: "Defendant's contention that the trial court did not instruct the

jury that a third party informer is to be treated as an agent of law enforcement officers for purposes of entrapment is likewise without merit. The trial court properly instructed the jury that if the crime was suggested by another person, whether or not a law enforcement officer, for the purpose of entrapment, the defendant is not criminally liable." (1 Cal.3d at p. 761.)

The *per curiam Moran* opinion did not clothe the statement with reasoning or discussion. In its support the opinion cited no case law, but rather two instructions published in California Jury Instructions Criminal (CALJIC).[2]

There are two reasons for classing the *Moran* endorsement of the two CALJIC instructions as dictum: First, the go-between who arranged Moran's drug sale to the police was undebatably a police agent when he proposed the sale. Hence there was no necessity to appraise the role of a citizen who had no police connection when he suggested the crime. Second, the appellant in *Moran* had charged the trial court with failure to instruct on entrapment by a third party informer, a charge which could have been met by the simple rejoinder: "It did too." The opinion went farther and declared the legal propriety of the two instructions given by the trial court. That declaration was unnecessary to the decision.

■ While the *stare decisis* doctrine requires us to adhere to the decisions of the Supreme Court, the doctrine does not apply to dictum. (*Norris v. Moody* (1890) 84 Cal. 143, 149 [24 P.37]; *Hess v. Whitsitt* (1967) 257 Cal.App.2d 552, 556 [65 Cal.Rptr. 45]; *People v. Goree, supra,* 240 Cal.App.2d at p. 310.) We do accord the *Moran* dictum the weight to which it is entitled as the expression of a majority of the Supreme Court. (*San Joaquin etc. Irr. Co. v. County of Stanislaus* (1908) 155 Cal. 21

---

[2]"CALJIC No. 851 (Revised). 'The law does not tolerate *one person*, particularly a law enforcement officer, generating in the mind of another person who is innocent of any criminal purpose, the original intent to commit a crime thus inducing such person to commit a crime which he would not have committed or even contemplated but for such inducement.

" 'If the intent to commit the crime did not originate with the defendant and he was not carrying out his own criminal purpose, but the crime was suggested *by another person* for the purpose of entrapping and causing the arrest of the defendant, then the defendant is not criminally liable for the acts so committed.' (Italics added.)

"CALJIC No. 852 (Revised). 'When law-enforcement officers are informed that a person intends to commit a crime, the law permits the officers to afford opportunity for the commission of the offense, and to lend the apparent cooperation of themselves or of *a third person* for the purpose of detecting the offender. When officers do this, if the suspect himself, originally and independently of the officers, intends to commit the acts constituting a crime, and if he does acts necessary to constitute the crime, he is guilty of the crime committeed. He has no defense in the fact that an officer or *other person* engaged in detecting crime was present and provided the opportunity, or aided and encouraged the commission of the offense.' (Italics added.)"

[99 P. 365]; *City of Coronado* v. *San Diego etc. Dist.* (1964) 227 Cal. App.2d 455, 480 [38 Cal.Rptr. 834].)

We distinguish between *ratio decidendi* and dictum, because the brief statement in *Moran* cites only secondary authority and, in light of primary authority, represents an erroneous interpretation of the law.

In support of the two instructions CALJIC cites *People* v. *Jackson* (1954) 42 Cal.2d 540 [268 P.2d 6]; *People* v. *Benford, supra;* and *People* v. *Valdez* (1961) 188 Cal.App.2d 750 [10 Cal.Rptr. 664]. The illusory character of these antecedents has been analyzed. (See Sinetar, *A Belated Look at CALJIC,* 43 State Bar J. 546, 547-549 (1968).) As the author of that analysis points out, both *Jackson* and *Benford* involved questions of entrapment by police officers only, not by citizen informers. In *Valdez* a citizen participated in the sale of narcotics by the defendant to the undercover agent, but had done nothing to instigate the sale. None of these cases holds that entrapment may be committed by a private citizen who is not acting for the police.

The heavy weight of precedent holds that it may not. The entrapment rule had its genesis in and revolves around the use of police decoys. (See *Sherman* v. *United States* (1958) 356 U.S. 369 [2 L.Ed.2d 848, 78 S.Ct. 819]; *Sorrells* v. *United States* (1932) 287 U.S. 435 [77 L.Ed. 413, 53 S.Ct. 210, 86 A.L.R. 249]; 73 Harv.L.Rev. 1333-1345 (1960); 60 Yale L.J. 1090-1131 (1951); 19 Hastings L.J. 825 (1968).) In *People* v. *Perez* (1965) 62 Cal.2d 769, 775 [44 Cal.Rptr. 326, 401 P.2d 934], the court sustained a refusal to instruct on entrapment for this stated reason: "There was no evidence that the man defendants allege 'planted' the marijuana was a law enforcement officer or someone acting in cooperation with the authorities."

A dictum in *People* v. *Wirth* (1960) 186 Cal.App.2d 68, 72 [8 Cal.Rptr. 823], recognizes the lack of any American case law holding purely private action sufficient to evoke the entrapment defense, citing 73 Harvard Law Review, *supra,* at page 1340.

Federal case law holds that " ' if the initiator of the criminal activity is not a government agent the defense of entrapment does not apply.' " (*United States* v. *DeAlesandro* (2d Cir. 1966) 361 F.2d 694, 698; *United States* v. *Comi* (4th Cir. 1964) 336 F.2d 856, cert. den. 379 U.S. 992 [13 L.Ed.2d 611, 85 S.Ct. 704]; *Beard* v. *United States* (8th Cir. 1932) 59 F.2d 940; *Polski* v. *United States* (8th Cir. 1929) 33 F.2d 686, cert. den. 280 U.S. 591 [74 L.Ed. 640, 50 S.Ct. 39].)

Research has brought to light only one decision, *Beasley* v. *State* (Okla. 1955) 282 P.2d 249, which states by dictum that the entrapment defense would be available if the crime were instigated by a private citizen who later

called in the police. Until the *Moran* dictum of the California Supreme Court, the *Beasley* dictum had neither ancestry nor posterity.[3]

At one time the California Supreme Court had adopted the view that an entrapped defendant was innocent of crime. (*People* v. *Jackson,* 42 Cal.2d 540, 547 [268 P.2d 6].) Later, in *People* v. *Benford, supra,* 53 Cal.2d at page 9, the court rejected this view, declaring that entrapment is a defense not because the accused is innocent, but in fulfillment of a judicial policy to prevent police officers from fostering crime. To say that a non-police decoy may commit entrapment ignores both the defendant's guilt and the law's policy to deter illegal police conduct. If the defendant has committed a crime without the helping hand of organized society, he should not escape conviction.

The two CALJIC instructions are not, of course, confined to narcotics cases. Transported into the context of civil disturbance prosecutions in which *agents provocateurs* have played a role, they may pose critical problems. In the latter context the entrapment rule's policy to deter only instigation by the police is even more emphatic than in the narcotics enforcement field.

■ Viewed in this perspective, the rule espoused in the two CALJIC instructions and endorsed by the *Moran* dictum is (a) unsupported, (b) contrary to case law, and (c) isolated from the policy underlying the entrapment defense.

It is also out of kilter with courtroom realities and heavily weighted in favor of the defense. As pointed out in 73 Harvard Law Review, *supra,* at page 1340, "it may be impossible to disprove a defendant's allegation of entrapment in a case of genuine complicity by a person who later had a change of heart and became an informant." Despite the citizen-informer's testimony that he did not contact the police until after the suggestion of crime, despite police testimony that he was not their agent, the *Moran* dictum would evoke the defense upon the defendant's naked testimonial claim of incitement by the citizen. Unless the jurors give complete credence to the citizen-informer and none to the defendant, the rule of reasonable doubt may impel them to accept the defendant's untested version of a private conversation, thus barring conviction despite his uncontradicted commission of the crime. The rule requiring the defense to produce evidence of police complicity at the time of the alleged inducement is fair to

---

[3] *People* v. *Fitzpatrick* (1926) 78 Cal.App. 37 [247 P. 601], has been cited for the proposition that a public official may raise entrapment by a private citizen as a defense to bribery. (See 21 Am.Jur.2d 211; Note, 69 A.L.R.2d 1397, 1441.) A reading of the *Fitzpatrick* case reveals that the trial court had given such an instruction, but the instruction's propriety was not in issue and not determined.

both sides and consistent with their relative courtroom capabilities, for the defense may utilize pretrial discovery to compel disclosure of any concealed connection between the informer and the police. (*Honore* v. *Superior Court* (1969) 70 Cal.2d 162, 168-170 [74 Cal.Rptr. 233, 449 P.2d 169].) Theoretically the police may lie, but hardly with the same readiness as the defendant.

Influenced by these considerations, we decline to follow the dictum in *People* v. *Moran, supra*. Rather, we uphold the trial court's rejection of instructions on entrapment because there was no evidence of police complicity when Koche allegedly solicited commission of the crime.

On a few minor points we adhere to the views stated in our original opinion. Defendant assigns error in jury instructions on confessions, there being no evidence that he made a confession. Defendant, however, had made statements to Koche that he had 25 lids of "grass," that he was selling marijuana to pay his rent and inquiring whether Koche knew of a buyer. In relation to the sale charge, these statements were admissions from which an inference of guilt could be drawn. In relation to the lesser included offense of marijuana possession (on which the court instructed the jury), these were confessions of guilt. The court did not err in giving instructions which defined confessions and admissions and which informed the jury of the weight to be given each.

Defendant objects to the general instruction (CALJIC 52, Rev.) listing the factors by which jurors are to weigh the credibility of witnesses, among them a prior felony conviction. Since defendant had no prior conviction, he charges prejudice at this point. The claim has no merit. The instruction in question covered all witnesses, not just the accused. The jury were instructed to disregard inapplicable instructions. It is presumed they followed this instruction. (*People* v. *Isby,* 30 Cal.2d 879, 896-897 [186 P.2d 405].)

Judgment affirmed.

Pierce, P. J., and Janes, J., concurred.

A petition for a rehearing was denied April 16, 1970.