[Civ. No. 38873. Second Dist., Div. Five. May 4, 1973.]

NOLAN D. NEGAARD et al., Plaintiffs and Appellants, v.
DEPARTMENT OF AERONAUTICS et al., Defendants and Respondents.

**COUNSEL**

Lascher & Rader, Edward L. Lascher and Richard E. Rader for Plaintiffs and Appellants.

Evelle J. Younger, Attorney General, Daniel J. Weston, Deputy Attorney General, Roger Arnebergh, City Attorney, Milton N. Sherman, Assistant City Attorney, and John F. Haggerty, Deputy City Attorney, for Defendants and Respondents.

OPINION

KAUS, P. J.—On October 31, 1968, the City of Los Angeles ("City") filed an application with the California Department of Aeronautics ("Department") for site approval of its proposed Palmdale International Airport. Pursuant to section 21665 of the Public Utilities Code hearings on the application were conducted by a hearing officer on March 10, April 29 and April 30, 1969, at Palmdale.

On July 28, 1969, the hearing officer issued a proposed decision, granting approval of the application, subject to certain conditions. On August 4, 1969, the Department adopted the proposed decision as its final decision, and expressly made it effective as of that date. Copies of the decision were mailed to the parties on August 5, 1969.

On October 6, 1969, Noland D. Negaard and the Palmdale Homeowners Association, appellants, filed a proceeding in the superior court, described as a "Petition for Writ of Mandamus (C.C.P. sec. 1094.5)." It sought to set aside the decision of the Department. The City and the Department demurred, alleging, among other things, that the petition was barred by the applicable statute of limitations. The demurrers were sustained with leave to plead "any facts showing tolling, estoppel, or waiver [of the statute.]" Appellants amended their petition, the City and the Department again demurred, and the demurrers were sustained without leave to amend on the ground that the action was barred. It was dismissed on March 29, 1971. Appellants appeal.

There can be no rational dispute with respect to the date on which—appellants' arguments aside—the applicable statute of limitations expired. It was September 3, 1969 (Gov. Code, § 11523), the Department having made its decision effective as of August 4, which it had the power to do. (Gov. Code, §§ 11519, 11521; *Eichman* v. *Escondido etc. Sch. Dist.*, 61 Cal.2d 100, 102 [37 Cal.Rptr. 199, 389 P.2d 727]; cf. *Cameron* v. *Cozens*, 30 Cal.App.3d 887, 891, fn. 3 [106 Cal.Rptr. 537].) *Walters* v. *Contractor's State License Board*, 229 Cal.App.2d 449 [40 Cal.Rptr. 390], gingerly cited by appellants, was abandoned by its collective creator in *Riemel* v. *House*, 264 Cal.App.2d 173, 175 [70 Cal.Rptr. 224].

Appellants' arguments that section 11523 of the Government Code presents no bar to the maintenance of this proceeding fall into three categories: 1. the Department's decision did not really become final on August 4, 1969, but at some unknown date thereafter; 2. the Department's decision was totally void and subject to attack at any time; and

3. respondents are estopped to rely on any applicable period of limitations.

None of these approaches has any merit. We discuss them in order.

## I.

The argument that the order of August 4, 1973, only had a "veneer of finality," but was really interlocutory in nature, springs from the fact that the site approval was conditional on relocating the two major runways on the proposed airport, and approval of air traffic patterns and of the zone of approach by the F.A.A.

Section 21666 of the Public Utilities Code specifically provided that site approvals may be granted "subject to any reasonable conditions . . . necessary to effectuate the purposes of this article."[1]

█ If appellants' point has any merit they could, in effect, seek judicial review of the site approval at about the time when the airport becomes operational. The planning, construction and operation of an airport is enough of a nightmare in federalism. (E.g., *City of Burbank* v. *Lockheed Air Terminal, Inc.*, 411 U.S. 624 [36 L.Ed.2d 547, 93 S.Ct. 1854]; *Allegheny Airlines* v. *Village of Cedarhurst*, 238 F.2d 812.) If the finality of state approval for the site can be delayed, as appellants suggest, until the F.A.A. has had its last relevant say with respect to matters within federal jurisdiction, airports simply could not be constructed in this state. In any event, the argument that conditions attached to an administrative order delay its finality has been decisively rejected. (*Ginns* v. *Savage,* 61 Cal.2d 520, 525 [39 Cal.Rptr. 377, 393 P.2d 689].)

## II.

The point that the order of August 4, 1969, was totally void rests, basically, on a series of non-equations which go something like this: "error = unfair trial = excess of jurisdiction = lack of jurisdiction = voidness."

Under this rubric appellants present us, in effect, with a string of arguments claiming various errors at the administrative level. The mood is

---

[1]The decision of the Department was made when section 21666 of the Public Utilities Code, as last amended in 1961 (Stats. 1961, ch. 2071, p. 4324, § 74), was in effect. The section was rewritten in 1969 (Stats. 1969, ch. 138, p. 354, § 257; Stats. 1969, ch. 712, p. 1394, § 7) and amended in 1972 (Stats. 1972, ch. 1309, § 4). The language with respect to conditional site approvals was not changed in any substantial way.

indignation and caustic vigor, based on solid scholarship and an advocate's ability to look at a rather innocuous administrative record as an example of drumhead justice. Just reading appellants' brief one does indeed get the general impression that somewhere along the line error did creep into the record.[2] All the same, the power of an administrative agency to err without losing jurisdiction does not vary in inverse proportion to counsel's command of hyperbole.

■ We have carefully reviewed the claimed errors which supposedly were so fundamental that the Department's August 4, 1969, order is really nothing but a piece of scrap paper. We need not decide whether there is merit in any of appellants' points. None can possibly be as basic as claimed.

### III.

Appellants claim that their amended petition below "contains specific allegations of conduct by both Department and City which show that it would be most inequitable for either to short-circuit petitioners' right to judicial review by urging the bar of any statute of limitations. . . ."

The grounds for an estoppel pleaded and argued before us may be summarized as follows:

1. The Department concealed a "material and substantial portion" of appellants' grounds for judicial review. Here it is charged that while the Department purported to conduct a hearing on all relevant issues relating to the proposed airport site, it later declined to consider "noise or other environmental aspects." On the advice of the Attorney General it then made its determination without taking such matters into consideration.

2. Appellants allege further that the Department and the City did not disclose to them that after the public hearings they "agreed to a concealed revamping of the proposed airport site, by the further movement of runway locations."[3]

---

[2] The image changes after perusal of respondents' briefs. One erroneous concept which clouds appellants' position in some respects is that they view the hearings conducted on behalf of the Department as the precise equivalent of a superior court trial in which they have all the rights of litigants. It is beyond the scope of this opinion to delineate the precise significance of the public hearing in the departmental process leading to the approval of an airport site, but it is obviously something different from a court trial or, indeed, from an administrative hearing of a disciplinary nature. (Cf. *Beverly Hills Fed. S. & L. Assn.* v. *Superior Court,* 259 Cal.App.2d 306, 320-324 [66 Cal.Rptr. 183].)

[3] In appellants' opening brief it is alleged that ". . . petitioners did not uncover the deception until several months later when Department was called upon to explain

There are several possible answers to the claim of estoppel. One decisive way of handling it would be to hold, as respondents urge we should, that appellants' expectations with respect to the consideration of noise pollution, environmental factors and the location of runways were legally unjustified in the first place or are, for other reasons, irrelevant. We need not, however, decide these matters. ■ Suffice it to say that nowhere in the amended petition do appellants allege when they became aware of the facts which allegedly estop respondents. (See *Casualty Ins. Co.* v. *Rees Investment Co.,* 14 Cal.App.3d 716, 719-720 [92 Cal.Rptr. 857].)

## IV.

■ The only remaining question is whether the superior court abused its discretion in denying further leave to amend the petition. It did not.

For reasons adequately explained by appellants' present counsel, the superior court permitted the initial petition to be filed without prior service.[4] For one reason or another—we need not attempt to assess blame—the first amended petition was not filed until January 5, 1971.

There is no suggestion in the record that any new facts have come to light since January 1971. At that time the matter had been in the hands of an attorney of outstanding ability for about 15 months. The trial court was well within its discretion when it apparently found it hard to believe that in the first amended petition he had not pleaded his best case.

The judgment is affirmed.

Thompson, J.,* and Keene, J.,* concurred.

A petition for a rehearing was denied May 30, 1973, and the opinion was modified to read as printed above. Appellants' petition for a hearing by the Supreme Court was denied June 28, 1973.

---

to another agency its precipitous action in approving the application in the face of overpowering evidence that the airport was ill-planned from the standpoint of noise and ecology. . . ." It is not, however, claimed that the discovery came after the filing of the amended petition below. This is of some significance on the issue whether leave to amend further should have been allowed.

[4] According to the application for such permission present counsel did not become involved in this matter until September 30, 1969. Until then the laboring oar on behalf of persons and entities opposing the airport development had been borne by the Palmdale School District. The school district, however, by a three to two vote, elected not to seek judicial review. We are not told whether this decision was made before or after September 3, 1969.

*Assigned by the Chairman of the Judicial Council.